UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KEVIN BYRD

    *Plaintiff*,

v.

AGENT RAY LAMB; OFFICER KOSKA;
and OFFICER W. LINDEMANN,

    *Defendants*,
_____/

Case No. 4:19-cv-3014

JURY DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, KEVIN BYRD, by and through his attorneys, complaining of Defendants, and respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil rights action in which the Plaintiff seeks relief for the violation of this rights secured by 42 U.S.C. § 1983, *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), and the Fourth and Fourteenth Amendment.

2. Jurisdiction of this Court is found upon 28 U.S.C. §§ 1331 and 1367(a).

3. The events that give rise to this lawsuit took place in the City of Conroe, County of Montgomery, State of Texas.

4. Venue is appropriate in the Southern District of Texas pursuant to 28 U.S.C § 1391(b) since the acts providing the legal basis for this complaint occurred in the City of Conroe, County of Montgomery, State of Texas.

## PARTIES

5. Plaintiff, Kevin Byrd ("Mr. Byrd" or "Plaintiff"), is a law-abiding citizen of the United States and a resident of the City of Conroe, County of Montgomery, State of Texas.

6. Defendant, Ray Lamb ("Defendant Lamb"), is employed by the United States Federal Government as an agent in the Homeland Security Department and was acting under color of law.

7. Defendant, Officer Koska ("Defendant Koska"), is employed by the City of Conroe as a police officer in the Conroe Police Department and was acting under the color of law.

8. Defendant, Officer W. Lindemann ("Defendant Lindemann"), is employed by the City of Conroe as a police officer in the Conroe Police Department and was acting under the color of law.

9. The individual Defendants Lamb, Koska and Lindemann, when referred to collectivity, will be referred to as the individually named "Defendant Officers."

10. Each and all of the acts of the Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by the Conroe Police Department.

11. All herein complained of actions of the Defendants were done recklessly, intentionally, maliciously, gross negligently, wantonly, knowingly, and with deliberate indifference, and in a manner that shocks the conscience.

## STATEMENT OF FACTS

12. On February 2, 2019, Mr. Byrd was at the hospital visiting his ex-girlfriend, Darci Wade, who had just been involved in a serious motor vehicle accident.

13. Mr. Byrd had received a phone call in the early hours of the morning requesting him to go to the hospital because Darci Wade had been severely injured and was requesting Mr. Byrd's presence.

14. The accident occurred when Eric Lamb collided with a Greyhound Bus which allegedly was broken down on the side of the road. Eric Lamb was driving Darci Wade's vehicle.

15. While at the hospital, Mr. Byrd spoke with a friend of Darci's, and learned about the accident.

16. Mr. Byrd then left the hospital. Mr. Byrd initially left to go check on Darci's pets and let them out.

17. On his way, Mr. Byrd learned that Darci and Eric Lamb had been kicked out of an establishment the night before.

18. Mr. Byrd decided to go to the establishment and inquire as to why they had been kicked out.

19. While waiting in the parking lot, Mr. Byrd saw a caretaker or custodian cleaning the parking lot. Mr. Byrd had a conversation with the man and learned that the entire parking lot is under video surveillance and that if he could obtain the video footage from the manager, who would arrive in a few hours.

20. Mr. Byrd was parked near a red dodge truck that he believed to be Eric Lamb's vehicle.

21. While waiting to speak to the manager, Mr. Byrd got hungry and decided to leave the parking lot to get something to eat.

22. As Mr. Byrd starts to drive away he notices someone inside of the red truck and thought it was Eric Lamb. It was not Eric Lamb, but Ray Lamb, (Defendant Lamb), Eric's father.

23. Defendant Lamb immediately jumps out and threatens Mr. Byrd with a gun and states that he would "put a bullet through his fucking skull."

24. Defendant Lamb yelled at Mr. Byrd that he is a federal agent and told him to roll down his window or he would blow his head off.

25. Defendant Lamb then attempts to smash the window of Mr. Byrd's car on two occasions.

26. Defendant Lamb's strikes on the window left marks and scratches.

27. Defendant Lamb, with his gun drawn, then stepped in front of Mr. Byrd's car to prevent him from driving away.

28. Defendant Lamb then tries to pull the trigger at Mr. Byrd but the bullet falls out / becomes dislodged.

29. Mr. Byrd calls the police to his assistance.

30. When Defendant Koska arrives, Defendant Lamb shows him his police-credentials.

31. Defendant Koska then immediately places Mr. Byrd in handcuffs and detains him in the back of the squad car.

32. Defendant Lindemann arrives shortly thereafter.

33. The handcuffs were so tight they caused Mr. Byrd's hands to turn purple.

34. Mr. Byrd asked Defendant Officers to loosen the handcuffs and to allow him to use the restroom.

35. Defendant Officers denied these requests.

36. Defendant Officers kept Mr. Byrd detained in this manner near four hours.

37. Defendant Lamb's wife then exited her vehicle and picked up the dislodged bullets from her husband's gun and put them in her car.

38. After some time, another officer shows up and conducts an investigation.

39. Mr. Byrd speaks to the officer and told him that he was in the parking lot before Defendant Lamb and that the officer should check the surveillance videos in the parking lot to confirm.

40. After seeing the videos, the investigating officer told Mr. Byrd that he was free to stay while he completed his investigation of Defendant Lamb.

41. Mr. Byrd told the officer he wished to press charges against Defendant Lamb.

42. The Officers Koska and Lindemann told Mr. Byrd that he was not free to stay and needed to leave the scene.

43. Out of concerns for his safety, having heard different instructions from the officers, Mr. Byrd left the parking lot.

44. Upon information and belief, once Mr. Byrd left the parking lot, Defendant Lamb was arrested and taken into custody for Aggravated Assault with a Deadly Weapon and Misdemeanor Criminal Mischief for his unlawful conduct against Mr. Byrd.

45. After Defendant Lamb was arrested, Mr. Byrd received a phone call from a blocked number informing him that "he doesn't know who he has fucked with." Upon information and belief, Eric Lamb made this phone call.

46. After Defendant Lamb was arrested, Eric Lamb and/or Defendant Lamb and/or Mrs. Lamb attempted to file harassment charges against Mr. Byrd. These charges were rejected by a court. Upon information and belief, these charges were instigated by Defendant Lamb.

47. Since Ray Lamb was arrested, Mr. Byrd had experienced stalking and his business has received false tips of unlawful activity requiring Mr. Byrd to retain counsel on the matter. Upon information and belief, Defendant Lamb caused the falsehood and instigated theft charges against Mr. Byrd.

48. Defendant asserted his privilege as a federal officer when he held Mr. Byrd at gunpoint. There was no lawful reason for Defendant Lamb to detain Mr. Byrd and no legal basis whatsoever to hold him at gun point.

49. There was no lawful reason whatsoever for Defendant Koska and Defendant Lindemann to detain and arrest Mr. Byrd.

50. As a direct and proximate result of the wrongful acts and omissions of Defendants, Mr. Byrd has sustained damages.

# COUNT I
# VIOLATION OF CIVIL RIGHTS UNDER *BIVENS*
# (Fourth Amendment – Unlawful Detention and Excessive Force)

### (*Against Defendant Lamb*)

51. Plaintiff incorporates herein all the prior allegations.

52. The Fourth Amendment guarantees citizens to be secure in their persons from unreasonable search and seizures.

53. A law enforcement officer may conduct an investigative stop if he has a reasonable suspicion, based on specific and articulable facts, that the stopped citizen has or is about to commit a crime.

54. Mr. Byrd is a law-abiding citizen.

55. At all relevant time, Mr. Byrd had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from interrogations and unlawful stops and excessive force pursuant to the Fourth Amendment to the United States Constitution.

56. At all times relevant, as a federal agent acting under color of law, Defendant Lamb was required to obey the laws of the United States.

57. At all times relevant, Defendant Lamb was acting under color of law where he stated he was a federal agent and ordered Mr. Byrd to comply.

58. Defendant Lamb had no reasonable suspicion nor probable cause to detain Mr. Byrd at gunpoint.

59. Further, the use of a gun and threat of deadly force by Defendant Lamb was objectively unreasonable, unnecessary, and excessive given the circumstances.

60. Mr. Byrd had done nothing unlawful. No crime was committed nor was one about to be committed whatsoever that warranted detention.

61. Defendant Lamb did not have any lawful basis whatsoever to detain Mr. Byrd.

62. Defendant Lamb's actions constituted unlawful detention.

63. Defendant Lamb threatened to kill Mr. Byrd.

64. Due to Defendant Lamb unlawful actions, he was charged with Aggravated Assault with a Deadly Weapon and Misdemeanor Criminal Mischief

65. The aforementioned acts deprived Mr. Byrd of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

66. As a proximate result of the illegal and unconstitutional acts of Defendant Lamb, Plaintiff was harmed and suffered damages for his physical, mental, emotional injury and pain, fright and shock, mental anguish, humiliation, and embarrassment.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Fourth Amendment– Unlawful Detention / Arrest)

### (*Against Defendant Koska*)

67. Plaintiff incorporates herein all the prior allegations.

68. The Fourth Amendment guarantees citizens to be secure in their persons from unreasonable search and seizures.

69. A law enforcement officer may conduct an investigative stop if he has a reasonable suspicion, based on specific and articulable facts, that the stopped citizen has or is about to commit a crime.

70. The Fourth Amendment requires police officers to possess sufficient probable cause to arrest criminal suspects.

71. At all relevant times, Mr. Byrd had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from unlawful interrogations, stops, and arrests and excessive force pursuant to the Fourth Amendment to the United States Constitution.

72. At all times relevant, as a police officer acting under color of law, Defendant Koska was required to obey the laws of the United States.

73. Defendant Koska detain Mr. Byrd without any lawful basis.

74. Defendant Koska had no reasonable suspicion that Mr. Byrd has or was about to commit a crime.

75. In fact, it was Mr. Byrd who called the police to help him when Defendant Lamb was holding him at gun point for no lawful reason.

76. Defendnat Koska handcuffed and arrested Mr. Byrd, and placed in him the backseat of his squad car for several hours and would not loosen his handcuffs when his hands began to turn purple or allow him to use the restroom when he asked.

77. Tightening Mr. Byrd's handcuffs to the point where his hands changed colors despite his plea to loosen them was unreasonable and excessive. Mr. Byrd was not a threat to anyone and had called the police to protect him. Further, preventing Mr. Byrd from using the restroom for several hours was unreasonable and unnecessary.

78. Defendant Koska did not have probable cause or any legal basis to arrest Mr. Byrd.

79. Defendant Koska's actions constituted unlawful arrest.

80. The aforementioned acts deprived Mr. Byrd of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

81. As a proximate result of the illegal and unconstitutional acts of Defendant Koska, Plaintiff was harmed and suffered damages for his physical,

mental, emotional injury and pain, fright and shock, mental anguish, humiliation, and embarrassment.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Fourth Amendment– Failure to Intervene)

### *(Against Defendant Lindemann)*

82. Plaintiff incorporates herein all the prior allegations.

83. An officer who is present at the scene and fails to take responsible steps to protect a victim of another officer's use of excessive force can be held responsible for his own nonfeasance.

84. At all relevant time, Mr. Byrd had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from unlawful detention and unlawful arrests to the Fourth Amendment to the United States Constitution.

85. Defendant Lindemann was present at the moment Defendant Lamb and Defendant Koska unlawfully detained and arrested Mr. Byrd. A reasonable police officer would have known that Defendant Lamb and Defendant Koska's actions were unlawful. Defendant Lindemann, with deliberate indifference, overlooked these unlawful actions and failed to intervene for Mr. Byrd's clearly established constitutional rights.

86. Defendant Lindemann decided to step back and watched Mr. Byrd's constitutional rights be violated.

87. At all times relevant, as a police officers acting under color of law, Defendant Lindemann was required to obey the laws of the United States.

88. Defendant Lindemann's action and omissions constituted a unconstitutional failure to intervene.

89. The aforementioned acts deprived Mr. Byrd of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America and in violation of 42 U.S.C. § 1983.

90. As a proximate result of the illegal and unconstitutional acts of Defendant Lindemann, Plaintiff was harmed and suffered damages for his physical, mental, emotional injury and pain, fright and shock, mental anguish, humiliation and embarrassment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, KEVIN BYRD, demands judgment and prays for the following relief, jointly and severally, against all Defendants:

    a.    Full and fair compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

    c.    Reasonable attorney's fees and costs of this action; and

d. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully Submitted,

Dated: **August 13, 2019**

GRABLE GRIMSHAW, PLLC

By: */s/ Brandon J. Grable*
Brandon J. Grable, Esq.
SBOT No: 24086983
SDTX No: 3246103
1603 Babcock Rd., Suite 118
San Antonio, TX 78229
(210) 963-5297
(210) 963-5291 (fax)
brandon@G2.law

*and*

EXCOLO LAW, PLLC

By: */s/ Solomon M. Radner*
Solomon M. Radner (*pro hac vice* admission to be applied for)
26700 Lahser Road, Suite 401
Southfield, MI 48033
(866) 939-2656
(248) 436-6858 (fax)
sradner@excololaw.com
**Attorney-in-Charge**

**COUNSEL FOR PLAINTIFF**